IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LANCASTER BINGO COMPANY LLC, | : |
| | : Case No. 2:22-cv-2252 |
| **Plaintiff,** | : |
| | : Chief Judge Algenon L. Marbley |
| v. | : |
| | : Magistrate Judge Jolson |
| GREG HOCKMAN, *et al.*, | : |
| | : |
| **Defendants.** | : |

**OPINION & ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 10). For the reasons more fully stated below, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion (ECF No. 10). Defendants' Motion to Stay Discovery (ECF No. 11) pending the Court's ruling on their Motion to Dismiss is **DENIED AS MOOT**. Plaintiff is given fourteen (14) days to amend its complaint.

**I.     BACKGROUND**

**A.  Factual Background**

Plaintiff Lancaster Bingo Company ("LBC") is a large full-service charitable gaming company. (ECF No. 5 ¶ 10). LBC distributes several products in its product line, including pull tab tickets, bingo paper, bingo ink makers, and electronic gaming equipment and accessories. (*Id.* ¶ 10). Through this work, LBC services charitable gaming, commercial sweepstakes, and lottery markets across the world. (*Id.*). Defendants Greg Hockman and Matthew Brueggemann are former sales employees of LBC. (*Id.* ¶ 1).

1

At some point around July 2011, LBC hired Hockman as a Sales Associate. When Hockman was hired, he signed a Non-Competition[1] and Non-Disclosure Agreement ("the Agreement"), under which he agreed not to compete with LBC for a period of two years post-termination. (*Id.* ¶ 22). He was promoted to Sales Representative for northern Virginia roughly a year later. (*Id*. ¶¶ 16–17). In this new role, Hockman was responsible for selling and distributing electronic bingo and electronic pull-tab machines and products including, for a time, Grover Gaming products. (*Id.* ¶ 18). Hockman was also expected to develop and foster relationships with new and existing customers along his assigned sales route. (*Id.*). Hockman was also provided with access to various trainings and confidential information such as LBC's sales data, route sales systems, product mix, product pricing, marketing initiatives, marking plans, product launch, and long-term sales goals. (*Id.* ¶ 19). In September 2021, Hockman signed a new version of the Agreement with the same terms as before, albeit with LBC's successor company. (*Id*. ¶ 26).

At some point around May 2017, LBC hired Brueggemann as a Sales Associate. (*Id.* ¶ 30). He signed the same Agreement as Hockman. (*Id.* ¶ 37). Brueggemann had been referred to LBC by Hockman. (*Id.* ¶ 31). Brueggemann was responsible for covering and supporting sales routes throughout Virginia, ensuring that sales objectives were met, and selling and distributing electronic

---

[1] The Non-Competition provision of the Agreement provides, in relevant part, that:
> Employee hereby agrees that during the time that Employee is employed by Corporation and for a period of two {2} years following the voluntary or involuntary termination of such employment, Employee will not:
>> (a) Directly or indirectly as either an owner, operator, agent, employee, independent contractor, investor, advisor, partner, officer, director, shareholder or in any other capacity, compete with Corporation or engage in the business of promoting, selling, manufacturing, distributing, repairing, maintaining, or fixing bingo, pull tabs, soft-tip style tickets bingo machines, bingo equipment, ticket or pull tab machines, or other game supplies, or any other products sold by Corporation at the time Employee's employment by Corporation ceases, within the states of Ohio, Pennsylvania, West Virginia, Indiana, Kentucky, Virginia, New York, Maryland, Illinois, New Jersey or any other areas in which Corporation is doing business at the time of termination of such employment; and/or
>> (b) Solicit, recruit or contact Corporation's customers in an attempt to induce such customer to cease doing business with Corporation either directly or indirectly.

(ECF No. 5 at 20 ¶ 1).

bingo and electronic pull-tab machines and products. (*Id.* ¶ 32). Like Hockman, Brueggemann was provided with confidential data such as LBC's sales data, route sales systems, product mix, product pricing, marketing initiatives, marking plans, product launch, and long-term sales goals. (*Id.* ¶ 32). In his role, Brueggemann routinely assisted Hockman with his sales route. In September 2021, Brueggemann signed a new version of the Agreement with the same terms as before, albeit with LBC's successor company. (*Id.* ¶ 40).

LBC was the exclusive distributor for certain Grover Gaming machines in Virginia. (*Id.* ¶ 44). Defendants sold the machines in Virginia as part their employment with LBC. (*Id.*). In September 2021, Grover Gaming ("Grover") attempted to cancel its distributorship agreement with LBC and instead distribute its products internally. (*Id.* ¶ 45). Both Defendants tendered their resignations to LBC on March 30, 2022. (*Id.* ¶ 47). Both Defendants became employees of Grover soon thereafter. (*Id.* ¶ 48).

Grover, like LBC, is in the business of manufacturing and distributing electronic pull-tab machines, gaming supplies, electronic bingo machines, and other charitable and for-profit gaming products. (*Id.* ¶ 49). Grover is also a licensed bingo supply manufacturer. (*Id.*). Grover recently opened a facility in North Carolina and obtained a license to manufacture charitable gaming products in North Dakota. (*Id.* ¶ 50). LBC "expects" that Grover "has applied or will soon be applying" for similar licenses in other states where it does business such as Virginia. (*Id.*). As of late, Grover is expanding its product line to include manufacturing paper charitable gaming products. (*Id.*). LBC alleges that, by virtue of this new paper product line, Grover is "competing even more directly with LBC in even more areas and could improperly benefit from the use of LBC's confidential information, trade secrets and goodwill through LBC's former employees like Hockman and Brueggemann to unfairly gain access to this market." (*Id.*). LBC also alleges that

Grover "induced [Defendants] to breach their Non-Competition and Non-Disclosure Agreements . . . so that it could take advantage of the customer relationships they cultivated while employed by LBC and steal the valuable confidential information that they learned during their employment with LBC." (*Id.* ¶ 51).

On April 1, 2022, LBC sent a letter to Defendants informing them that their employment with Grover was in direct breach of the Agreement and requesting their "full compliance" with the same. (*Id.* ¶ 52). Defendants' counsel responded that Defendants would be working for Grover's "historical horse racing ("HHR")" gambling business and thus would not be competing with LBC in those roles. (*Id.* ¶ 54). There are only four licensed locations in Virginia that allow HHR gambling, making it a small market that is "already at full capacity." (*Id.* ¶ 55). LBC thus alleges that Defendants' new roles are simply pretext to allow them to work for a competitor while violating the terms of the agreements. (*Id.* ¶ 54). Nonetheless, LBC alleges, the HHR games that Defendants claim to work with are competitive with the charitable gaming products offered by LBC. (*Id.*). Defendants have also failed to return various LBC property and information, including detailed sales notebooks which contain logs of customer accounts, sales history, notes of visits, decisionmakers and other valuable confidential information. (*Id.* ¶ 55).

## B. Procedural Background

Plaintiff first filed this action in the Fairfield County Court of Common Pleas on April 26, 2022. (ECF No. 1-1). The case was removed to this Court on May 25, 2022. (ECF No. 4). The Complaint (ECF No. 5) contains three causes of action: Counts I and III contain breach of contract claims while Count II contains a claim for misappropriation of trade secrets. Defendants timely filed their Motion to Dismiss (ECF No. 10) and its Motion to Stay (ECF No. 11) discovery while the aforementioned motion is pending. This matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Finally, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019).

While *Twombly* does not preclude a party from pleading factual allegations based upon "information and belief," the complaint should indicate that "the facts are peculiarly within the possession and control of the defendant, or . . . the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010)). Pleading on information and belief may be permissible "when a plaintiff may lack personal knowledge of a fact, but have sufficient data to justify interposing an allegation on

5

the subject or be required to rely on 'information furnished by others." *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *6 (S.D. Ohio Sept. 1, 2016).

### III. LAW & ANALYSIS

#### A. Breach of Contract (Counts I and III)

Plaintiff proceeds on two separate breach of contract claims: one against both Defendants for working for Grover and disclosing trade secrets and the other against Defendant Hockman for soliciting Defendant Brueggemann to leave LBC to join him at Grover. This Court analyzes each in turn.

##### 1. Breach of Non-Competition Provision (Count I)

Under Count I (breach of contract), Plaintiff alleges that Defendants violated the Agreement by doing the following:

> (l) taking a job with Grover Gaming; (2) competing, directly or indirectly, with LBC; (3) upon information and belief, taking or attempting to take LBC's customers and/or business; and (4) upon information and belief, taking, retaining, converting, using, disclosing, furnishing and/or making available to third parties LBC's trade secrets and confidential information.

(ECF No. 5 ¶ 61).

Defendants argue that Plaintiff fails plausibly to allege claims for breach of contract because there are no allegations that they competed with LBC in violation of their agreements. Defendants contend that Plaintiff never provides a factual predicate for the alleged breach. Further, Defendants continue, insofar as Plaintiff's claim alleges that Defendants took or tried to take Plaintiff's customers and disclosed secret information to third parties, the allegations are inadequately based "upon information and belief." Instead, Defendants argue, the complaint's only factual allegations are that Defendants are working for Grover, which is permitted by the Agreement, but not that they are directly taking any prohibited action. In fact, Defendants argue,

LBC recognizes that Defendants work with HHR gambling, a product with which LBC does not work.

Plaintiff first argues that Defendants' inclusion of the following documents into their motion must be disregarded: (1) Hockman's offer letter from Grover Gaming; (2) Brueggemann's offer letter from Grover; and (3) a position description for the "HHR Specialist" from Grover. On the merits, Plaintiff argues that Defendants' mere employment with Grover breaches their respective Agreements because they are prohibited from "directly or indirectly, as an . . . employee, compet[ing] with [LBC]." (*Id*. at 20). According to Plaintiff, the complaint adequately alleges that Defendants work for a direct competitor, which has entered the same market as Plaintiff, is pursuing the same customers, and is selling the same product line as LBC. Plaintiff contends that it alleged enough facts to support the reasonable inference that Defendants' new purported roles with Grover in the HHR market are mere pretext to allow them to subvert their employment agreements. Further, Plaintiff argues, a complaint may validly plead facts upon information and belief if the assertion is based on information that makes the inference of culpability plausible.

Under Ohio law, a claim for breach of contract "requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458. Generally, interpretation of contracts—especially ambiguous ones—is a question of fact inappropriate for resolution on a motion to dismiss. *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 971 (S.D. Ohio 2022) (citing *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008)); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, No. 2:03-MD-1565, 2006 WL 2849784, at *7 (S.D. Ohio Oct. 3, 2006).

7

Given that Plaintiff's complaint does not reference any of Defendants' documents, this Court disregards them. Because the Agreement is extensively referenced in and attached to the complaint, however, this Court refers to the provisions therein. *See Becker v. PennyMac Loan Servs., LLC,* 583 F. Supp. 3d 1090, 1097 (S.D. Ohio 2022) (explaining that "the Court can . . . consider the documents that a defendant attaches to its motion . . . to the extent that those documents are referenced in the complaint, or otherwise subject to judicial notice for some reason.").

The broad language of the Agreement's Non-Competition provision is ambiguous on the question of whether Defendants breached the Agreement by merely working for Grover. On one hand, it is not apparent from the complaint's factual allegations that Grover is a competitor. The complaint does not allege that Grover sells competing products in any of the markets covered by the Agreement. Further, the complaint alleges that Defendants work in HHR gambling—but Plaintiff never contends that the HHR work directly creates competition with LBC. The Agreement, however, prevents Defendants from competing with LBC "directly or indirectly." Whether Defendants breached this provision depends largely on the scope of "directly or indirectly," notwithstanding that the complaint recognizes that Defendants work in HHR gambling. Interpreting this ambiguous phrase is improper at this early stage in the litigation. *See Miranda*, 594 F. Supp. 3d at 971 (explaining that interpretation of an ambiguous contract is inappropriate on a motion to dismiss). As such, dismissal of Count I is improper on the first two bases for Plaintiff's breach of contract claim.

Plaintiff's remaining bases for breach of contract do not fare as well. The factual allegations contained in the complaint fail to support the conclusion that Defendants are liable for "taking or attempting to take LBC's customers and/or business" or "taking, retaining, converting, using,

disclosing, furnishing and/or making available to third parties LBC's trade secrets and confidential information." The factual allegations that Plaintiff put forth to suggest that Defendants are liable on the remaining bases for its claim are the following: after a period of working in concert with LBC, Grover began positioning itself to compete with it. Defendants left LBC to work for Grover shortly thereafter. Defendants took an undetermined amount of confidential information from LBC when they departed—and refuse to return the property. Defendants now work in Grover's HHR gambling business in the Virginia market. Plaintiff purports to support the legal conclusions supporting both bases through a combination of "information and belief," and these sparse factual allegations. There is an inferential gap between the facts that Plaintiff alleges and the conclusions that Plaintiff proffer such that there is "no factual information that makes the inference of culpability possible." *Cassidy*, 2014 WL 1599518, at *3.

As such, this Court **GRANTS** Defendants' Motion dismissing Plaintiff's last two bases for Count I (alleging the Defendants breached the contract by taking a position with Grover and by competing with LBC) and **DENIES** the Motion as to Plaintiff's first two bases (alleging the Defendants breached the contract by taking or attempting to take LBC's business and by taking and making available to third parties LBC's trade secrets and confidential information).

### 2. Breach of Non-Solicitation Provision (Count III)

Under Count III (breach of contract), Plaintiff alleges that Defendant Hockman breached the Agreement by recruiting and soliciting Brueggemann to leave LBC to join him at Grover. The Non-Solicitation provision of the Agreement provides that, "[w]hile employed by Corporation and for one year thereafter Employee agrees not to solicit or attempt to induce any employees of Corporation to become an employee of any other entity." (ECF No. 5 at 21 ¶ 5).

9

Defendants argue that dismissal is warranted because the complaint contains no allegations that Hockman solicited Brueggemann to leave LBC for Grover. Instead, Defendants contend, the complaint alleges only that both men worked together at LBC, resigned from LBC on the same date, and assumed new roles afterward at Grover.

Plaintiff contends that the complaint's allegations provide enough facts supporting the plausible inference that Hockman solicited Brueggemann. Plaintiff argues that, given that Hockman was the more senior LBC employee and the more customer-facing sales representative, it is reasonable to conclude that Hockman was the "point person" who instigated and facilitated Defendants' joint departure.

Plaintiff's complaint, relying heavily "upon information and belief," does not provide enough facts supporting the inference that Hockman solicited Brueggemann to work for Grover to survive dismissal. *See Cap City Dental Lab, LLC*, 2016 WL 4573993, at *6. Neither does the complaint allege or indicate that the development of the necessary facts to support this claim lie "peculiarly within the possession and control of the defendant." *Id.*

Despite the scarcity of facts in the complaint which weigh on this issue, the few facts that *were* alleged could support several other plausible inferences. The alleged facts make it equally plausible, for example, that *Brueggemann* solicited Hockman to work for LBC; after all, one could assume from Brueggemann's shorter affiliation with LBC that he had a lesser sense of company loyalty than would a longer-serving employee like Hockman. It is also equally plausible that Grover itself approached Defendants to offer them employment, given that Grover was allegedly preparing to compete with LBC and was possibly aware that Defendants were selling its products on LBC's behalf.

As such, this Court **GRANTS** Defendants' Motion dismissing Count III.

### B.  Misappropriation of Trade Secrets (Count II)

Under Count II (misappropriation of trade secrets), Plaintiff alleges that Defendants, "upon information and belief," misappropriated and made unlawful use of LBC's trade secrets in violation of Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Revised Code § 1333.61, *et seq*.

Defendants argue that Plaintiff fails plausibly to allege facts showing either the existence of a trade secret or that Plaintiff misappropriated the same. Defendants assert that Plaintiff's description of the purported trade secrets as "pricing and margins, plans, designs and confidential aspects of its relationships and interplay between and among manufacturers, customers, and business associates" is too broad and vague. Defendants contend that Plaintiff further fails to identify how the categories of alleged confidential information have "independent economic value" affording Plaintiff a competitive advantage in the industry. Further, claim Defendants, LBC implicitly acknowledges that Grover is independently in possession of much of this information given that the two companies recently terminated a licensing agreement. Defendants assert that Plaintiff also fatally failed to plead that Hockman and Brueggemann engaged in an unauthorized use of the trade secrets; only that they did so upon "information and belief."

Plaintiff responds that a misappropriation claim can be supported at this stage by relying upon "information and belief" in its factual allegations. Plaintiff contends that it sufficiently alleges that LBC has developed certain protected information, and that Defendants have refused to return this trade secret information.

The OUTSA provides a cause of action in the state of Ohio for the misappropriation of trade secrets. O.R.C. § 1333.61, *et seq*. To state a claim under the OUTSA, Plaintiff must plausibly allege "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; (3) the unauthorized use of a trade secret." *Allied Erecting &*

*Dismantling Co. v. Genesis Equip. & Mfg.*, Inc., 649 F. Supp. 2d 702, 711 (N.D. Ohio 2009) (quoting *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.*, 258 Fed.Appx. 860, 861 (6th Cir. 2008)). The Ohio Supreme Court has identified six factors—of which neither is dispositive—to determine whether information constitutes a trade secret pursuant to O.R.C. 1333.61(D):

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Hance v. Cleveland Clinic*, 8th Dist. No. 110129, 2021-Ohio-1493, 172 N.E.3d 478, ¶ 28 (quoting *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524, 687 N.E.2d 661, 671 (1997)).

Plaintiff's complaint alleges that Defendants have refused to return the following "vital and sensitive LBC property and information" giving rise to its misappropriation claim: "detailed sales notebooks - that keep logs of customer accounts, sales history, notes of visits, decisionmakers and other valuable confidential information - which Defendants maintained as employees of LBC." (ECF No. 5 ¶ 55). This vague description provides this Court with insufficient information to determine whether any the information that Defendants allegedly misappropriated constituted trade secrets. Even if Plaintiff had adequately established that a trade secret is at issue, the complaint suffers from the defect that the facts do not support the inference that Defendants misused the property. Indeed, Plaintiff alleges that Defendants withheld certain confidential and proprietary information and that Defendants are now employed by a competitor in a non-competitive industry (HHR gambling). But these allegations, without more, fail to support the "inference of plausibility." *Cassidy*, 2014 WL 1599518, at *3.

12

As such, this Court **GRANTS** Defendants' Motion dismissing Count II.

### C. Plaintiff's Request for Leave to Amend

In its motion in opposition, Plaintiff requests this Court grant leave to amend the complaint if it finds the complaint deficient. Federal Rule of Civil Procedure 15 provides that the trial court should "freely give" leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Here, although this Court dismisses several of Plaintiff's claims due to defective pleading, the allegations are plausible enough that the complaint's deficiencies could be cured by amendment. Given Rule 15(a)'s "a liberal policy of permitting amendments to ensure the determination of claims on their merits," therefore, this Court permits Plaintiff leave to amend. *DN Reynoldsburg v. Shoe Show, Inc.*, No. 2:18-CV-1190, 2019 WL 4233129, at *3 (S.D. Ohio Sept. 6, 2019) (Marbley, J.).

### IV. CONCLUSION

Based on the foregoing, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 10). Specifically, this Court **DISMISSES** the last two bases of Plaintiff's Count I and the entirety of Plaintiff's Counts II and III **WITHOUT PREJUDICE**. Defendants' Motion to Stay Discovery (ECF No. 11) pending the Court's ruling on their Motion to Dismiss is **DENIED AS MOOT**. Plaintiff is given fourteen (14) days to amend its complaint.

IT IS SO ORDERED.

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED:** February 13, 2023